IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-0866-CV-W-ODS |
| JOHN DOE #1, by and through parent and Next Friend, et al., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiff's Motion for Summary Judgment (Doc. # 17) and Defendants' Motion for Summary Judgment (Doc. # 19). For the following reasons, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

## I. BACKGROUND

This case involves a coverage dispute between an insurance company and victims of a Church minister's sexual abuse. The Church was the named insured on a policy of liability insurance issued by the insurance company, GuideOne Specialty Mutual Insurance Company ("GuideOne"). GuideOne has brought this declaratory judgment action seeking interpretation of the insurance policy, naming the victims, John Does # 1 through # 8 ("Defendants"), as defendants. Interestingly, the Church is not a party to this case.

The parties have stipulated to all of the material facts. In particular, the parties agree that only one minister committed acts of sexual misconduct, but that there were multiple victims. They also agree that the abuse occurred in each of three years, and that the applicable policy limits are available for each of those three years. The only

issue before the Court is whether multiple acts of molestation of different persons by one minister during a policy year constitute a single occurrence, with the $250,000 occurrence limit applying, as claimed by GuideOne; or whether the multiple acts of molestation constitute separate occurrences with the aggregate limits of $500,000 applying, as argued by Defendants.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

"[W]hether an insurance policy is ambiguous is a question of law." Todd v. Missouri United Insurance Counsil, 223 S.W.3d 156, 160 (Mo. 2007). "Insurance policy language which is unambiguous must be given its plain and ordinary meaning." Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri, 965 S.W.2d 194, 196 (Mo. Ct.

2

App. 1998). "Courts may not create an ambiguity in order to distort the language of an unambiguous insurance policy, but where the language of an insurance policy is ambiguous, it must be construed against the insurer." Mansion Hills Condominium Ass'n v. American Family Mut. Ins. Co., 62 S.W.3d 633, 637 (Mo. Ct. App. 2001). Policy language is not ambiguous unless "it is reasonably open to different constructions." Id. (quoting Martin v. U.S. Fidelity and Guaranty Co., 996 S.W.2d 502, 508 (Mo. banc 1999)).

In this case, the Sexual Misconduct Liability Coverage Form[1] contains the following relevant provisions:

> 1. INSURING AGREEMENT
>
> We agree to cover your legal liability for damages because of bodily injury, sickness or disease, including death resulting from any of these at any time; mental anguish or emotional distress sustained by a person as a result of sexual misconduct which first commences during the policy period.
> . . .
>
> 2. LIMITS OF LIABILITY
>
> Our obligation to pay damages for any one occurrence is the Each Occurrence limit shown on the Endorsement Schedules in the Declarations. Our total obligation for damages covered by the Coverage Form is the Total Damages limit shown on the Endorsement Schedules in the Declarations regardless of the number of claims or occurrences, or number of insureds.
>
> Regardless of the period of time over which such acts occur or when damages are sustained, all acts of sexual misconduct by one person . . . will be considered one occurrence in determining our liability under this section.

The policy language quoted above is not ambiguous. Rather, it is reasonably open to only one interpretation. Because "all acts" of sexual misconduct by one person are deemed "one occurrence," the number of victims (here, eight) does not affect the

---

[1] The parties agree that the Sexual Misconduct Liability Coverage Form of the policy provides coverage to the Church for the minister's acts of molestation, and that the Commercial General Liability Coverage Forms and the Directors, Officers or Trustees Liability Endorsements and coverage parts do not provide coverage for those acts.

3

number of occurrences under the policy. Thus, whether the minister abused one person one time or several persons multiple times, there is only one occurrence under the policy.

Defendants argue that generally an "occurrence" in the context of an insurance contract refers to a single event or incident, which runs contrary to the interpretation of "occurrence" as multiple, separate and distinct incidents, potentially involving different persons at different times. While the definition of "occurrence" in the Sexual Misconduct Liability Coverage Form may not be in accordance with the ordinary understanding of the term, because the policy language is clear, the policy language must control. See Mansion Hills Condominium Ass'n., 62 S.W.3d at 638 ("If a term is specifically defined in an insurance policy, courts will normally look to that definition and nowhere else to determine its meaning.").[2]

Defendants also argue that the Limits of Liability must be read in context with the Insuring Agreement. The Insuring Agreement provides coverage for damage "sustained by *a person* as a result of sexual misconduct." Defendants maintain that because the Insuring Agreement is written in terms of a singular victim, the Limits of Liability must be interpreted in such terms. Therefore, while all acts of sexual misconduct by one person against "a person" are one occurrence, acts of sexual misconduct against more than one person are more than one occurrence. Defendants' interpretation requires a distortion of the policy language. Specifically, it requires the policy to be changed to read "all acts of sexual misconduct by one person . . . will be considered one occurrence . . . <u>unless the acts are directed at more than one person, and then they will be considered more than one occurrence.</u>"

The policy unambiguously states that "all acts . . . by one person . . . will be

---

[2] Defendants point out that the "Definitions" section of the Sexual Misconduct Liability Coverage Form does not contain a separate definition of "occurrence." Therefore, Defendants argue that the undefined term must be given its "common or usual meaning," citing Camden v. State Farm Mutual Automobile Insurance Co., 66 S.W.3d 78, 81 (Mo. Ct. App. 2001). While a separate definition for "occurrence" is not provided, the language in the Limits of Liability section is clear and unambiguous in explaining how the term must be interpreted.

4

considered one occurrence." The Court agrees with GuideOne's repeated assertion that "All means all." While the policy could have included language reemphasizing that all acts are one occurrence, "regardless of the number of persons involved, or the number of incidents or locations involved, or the period of time during which the acts of . . . abuse took place," as Defendants maintain is required, the policy is unambiguous as written. Likewise, the fact that the policy contains such emphasizing language in other places does not create an ambiguity here.[3] The Insuring Agreement's statement of coverage for injury sustained by "a person" is nothing more than a general term clarifying that someone must be injured; it does not modify the meaning of "occurrence" for purposes of limiting liability under the Sexual Misconduct Liability Coverage Form.

Because both parties agree that in this case all acts of sexual misconduct were perpetrated by one person, there has been only one occurrence in determining GuideOne's liability. Therefore, the $250,000 per policy year occurrence limit applies, and a total of $750,000 of coverage is available under the policy.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgement is DENIED.

---

[3] The Sexual Misconduct Liability Coverage Form limits "Total Damages" "regardless of the number of claims or occurrences, or number of insureds." The Commercial General Liability Coverage Form places limits on liability "regardless of the number of: . . . [i]nsureds; . . . [c]laims made or 'suits' brought; or . . . [p]ersons or organizations making claims or bringing 'suits.'"

IT IS SO ORDERED.

                                                        /s/ Ortrie D. Smith
                                                       ORTRIE D. SMITH, JUDGE
DATE: June 30, 2008                     UNITED STATES DISTRICT COURT